Stanley J. PADYKULA

v.

Josephine LUONI, Executrix.

No. 80–479–Appeal.

Supreme Court of Rhode Island.

May 18, 1983.

James F. McCoy, Pawtucket, for plaintiff.

Joseph E. Marran, Jr., Pawtucket, for defendant.

## OPINION

KELLEHER, Justice.

Stanley J. Padykula (Stanley) and Josephine Luoni (Josephine) are two of the seven children born to Marcin and Konstancja Padykula. Stanley is before us on an appeal from the denial by a Superior Court justice of his motion for a new trial, which followed a July 15, 1980 rejection by a jury of Stanley's contention that in October 1971 his mother either lacked the requisite testamentary capacity to make a valid will or the will was a product of undue influence exerted on his mother by persons unknown to him.

Stanley's parents were born in Poland. After their arrival in the United States, they came to Rhode Island and in due course settled in Pawtucket. In October 1971 the parents, who were then in their late seventies, lived in the second-floor tenement of their three-family Lincoln Avenue residence.

Before us Stanley limits his appeal solely to the issue of his mother's testamentary capacity; and to put this question in its true focus, it is necessary that we go back to October 1971. At that time Marcin Padykula was ailing. He spoke broken English, and his wife's expertise in that area appears to have been a matter of dispute.

Conversations between the couple were conducted in Polish. Stanley suggested to his parents that they should "make a will," and this suggestion was heeded.

In early October Stanley's sister Josephine telephoned Stanley J. Bednarczyk, an attorney who, when he first conferred with the Padykulas at their home, had been practicing law in the Blackstone Valley, specifically in the areas of Pawtucket, Central Falls, and Cumberland, for over twenty-five years. At the first meeting, the attorney informed the couple that they had the power to dispose of their property as they wished, and the father responded by saying he was "going to do what he wanted to do." According to the attorney, the wife at this point didn't say anything; she smiled. When asked by Stanley's attorney if the wife was apparently going along with the husband, the attorney responded, "That's right."

After this initial conference, Mr. Bednarczyk returned to the Padykulas' dining room "within a couple of days" with two wills that he had typed. They were mutual wills in that each spouse left to the other whatever property each was entitled to at death; and in the event one predeceased the other, the survivor's estate was to be distributed, but not equally, among the seven children. Each child, with the exception of Josephine, was given a legacy of $1,000, and the payment of each legacy was a charge upon the couple's real estate, which was given to Josephine subject to any encumbrances existing on the real estate at the time of the survivor's decease. All seven children were to share equally in any money remaining in the survivor's bank accounts at the time of his or her decease. Josephine was also designated the residuary beneficiary of whatever estate was not disposed of by the other provisions of the will as well as a substitute executrix in the event one spouse predeceased the other.

Marcin Padykula died some ten weeks after his execution of the will in early January 1972. Shortly thereafter Attorney Bednarczyk met Konstancja and advised her that there was no need to incur probate expenses. He simply filed the necessary tax reports with the state's Inheritance Tax Division and cleared the widow's title to the real estate.

Konstancja died on April 24, 1975, approximately three and one-half years after the execution of the mutual wills. Her will was admitted to probate by the Pawtucket Probate Court on June 11, 1975. Thereafter, Stanley instituted the present appeal.

The trial justice's rejection of Stanley's motion for a new trial is somewhat terse. It reads as follows:

"Mr. Bednarczyk testified as to the execution of the will and gave a fairly straightforward story. Certainly, his memory was affected by the passage of time, as would any lawyer's be, in the drawing of wills.

"The provisions of the will, as Mr. Marran has pointed out in his argument, left very little above the thousand dollars that Josephine had to pay to each of them.

"I think, as I thought then, that the jury did a good job in assessing this case, and that it followed the court's instructions. Therefore, I will not grant the motion for a new trial."

Stanley classifies the trial justice's brief remarks as mere rubber stamping of the jury's verdict and an obvious violation of the requirement that a trial justice, in considering a motion for a new trial, make an independent appraisal of the testimony, during which he must make a choice regarding whom and what he would believe. Stanley complains that at no time did the trial justice allude to the testimony in which Stanley gives the impression that his mother's knowledge of Polish was about on a par with her mastery of English. He seizes on the smiling-going-along portion of the record as well the fact of his mother's inability to read English as positive proof that his mother, "when she signed the paper placed in front of her, did not have sufficient testamentary capacity and understanding and intent to qualify that paper as

her last will and testament." Stanley's selective vision can be rated 20/20. However, his contention begins to unravel when one looks at the total picture as disclosed by the record.

In deference to Stanley and out of concern for his rights, we shall assume that the trial justice has failed to do what is expected of a trial justice in considering a motion for a new trial that is based upon the alleged insufficiency of the evidence. We shall do here what we did in *Morinville v. Morinville,* 116 R.I. 507, 516, 359 A.2d 48, 54 (1976), and scores of other cases. We shall invoke the so-called appellate rule and examine the evidence in the light most favorable to the prevailing party to determine if there is any competent evidence that supports the jury's verdict. If there is, the verdict will be affirmed and the motion for new trial denied.

Before turning to the evidence, we would point out to Stanley that a will drawn in accordance with the intent of its maker is to be given effect even though the will is written in language not understood by the maker when it is shown that the maker had full knowledge of the will's contents. This court on two occasions has ruled that a person who does not understand the language in which a will is written may, with the assistance of an interpreter, make a valid will. *Marcinko v. D'Antuono,* 104 R.I. 172, 243 A.2d 104 (1968); *Quaratiello v. Di Biasi,* 43 R.I. 325, 112 A. 215 (1921). This principle, which is followed virtually everywhere, gives realistic consideration to the manner in which persons living in this country and not conversant with the language would be expected to transact business of this nature. *See* Annot., 37 A.L.R.3d 889 (1971).

Attorney Bednarczyk's testimony is crucial. For the most part, all of the conversations he held with the Padykulas were in Polish for, as Mr. Bednarczyk explained to the jury, "We all spoke excellent Polish, * * * it would be ridiculous to speak in English with [them]." He first met with the Padykulas in their dining room and, in his words, "got to business right away" when he began by explaining to them the significance of a will, their right to dispose of their property as they desired, and their right to change the will at any time before death. He was shown the couple's bankbook and the deed to their real estate. Although the father did most of the talking, the attorney told the jury that it was quite obvious that the couple had consulted with each other before he spoke with them.

On the second visit, before the wills were executed, the attorney read the husband's will to the couple in Polish, having cautioned them before doing so to stop him if there was anything in its provisions they did not want or that they could not understand so that the proper corrections could be made. There was no necessity for reading the mother's will because, in the attorney's words, "they both wanted it the same, excepting the substitution of their names, not knowing who [was] going to die first." After the reading was completed, the couple neither took issue with any of the provisions nor made any suggested changes. An individual who was to act as the witness was summoned from a nearby shop, and in his presence Attorney Bednarczyk asked the couple a number of questions, in English, including (1) "Did I read this will to you?" (2) "Do you know who all your relatives are?" and (3) "Does this will dispose of your property as you want it to [be] dispose[d]?" They answered affirmatively to all of these inquiries.

Finally, in seeking the competent evidence that would support the jury's verdict, we need go no further, for the testimony presented by the will's scrivener, Attorney Bednarczyk, amply furnishes the evidentiary support for the jury's verdict. Thus, the trial justice's denial of Stanley's motion for a new trial was well warranted.

Stanley's appeal is denied and dismissed, and the order appealed from is affirmed.