Thomas **BELANGER**

v.

George **CROSS**, Finance Director of the City of Central Falls.

No. 82–314–Appeal.

Supreme Court of Rhode Island.

Feb. 19, 1985.

Mandate Amended March 21, 1985.

John F. McBurney, Pawtucket, for plaintiff.

Robert Newman, City Sol. for City of Central Falls, William F. McMahon, McMahon & McMahon, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal by the city of Central Falls from a Superior Court judgment awarding the plaintiff, Thomas Belanger (Belanger), $50,000 in damages for injuries sustained while he was being arrested by officers of the Central Falls police department in the early morning of September 23, 1976. After a jury verdict was returned in favor of Belanger, the Superior Court entered judgment thereon and denied the defendant's new-trial and directed-verdict motions.

The record indicates that Belanger, several hours prior to his apprehension by the officers, had decided to alleviate his perceived negative mental state by drinking a quart of tequila and supplementing his libation with "a couple" of tablets of "THC" plus a marijuana cigarette. Once fortified, Belanger returned to his home, which he shared with his parents. When Belanger informed his mother of his intent to return to the streets, she telephoned the Central Falls police department for assistance. Belanger left the domicile when he heard his mother talking to the police. Shortly thereafter, after knocking a side-view automobile mirror off a parked truck, he was observed by Officer Robert Cameron on Dexter Street.

When Officer Cameron, who was on foot patrol, informed Belanger that he was about to be taken to police headquarters, Belanger retorted: "The only way you'll take me in is if you shoot me." Immediately thereafter, according to the uncontradicted testimony of Belanger, Officer Cameron struck Belanger on the side of his head with a nightstick with such force that his head was split open. Belanger then proceeded to take the nightstick from Cameron, and somewhere in the ensuing scuffle the stick knocked Cameron's hat to the ground. However, Belanger returned the stick to the policeman and challenged him to secure reinforcements for a showdown a few blocks away on Kendall Street. Cameron then allowed him to leave and, through the use of a walkie-talkie radio, informed his fellow officers of the proposed meeting on Kendall Street. What happened thereafter is a matter of dispute.

The officer who responded to Officer Cameron's message and subsequently transported him to Kendall Street testified at trial. In cross-examination he agreed with Belanger's attorney that Cameron was "disturbed about having his hat knocked off." This witness also reported that when he first observed Belanger, he saw blood on and around Belanger's facial area and in his hair.

Belanger, who on the night in question was 5 feet 6 inches in height and weighed 145 pounds, testified that during the course of his encounter with them the police repeatedly hit him while he cried and begged them to stop. Two of the four officers who were present at the arrest testified on behalf of the city. They told the jury that Belanger was wild, struggling and in general quite resistant to submitting to arrest. According to the police, Belanger's unruly and turbulent behavior necessitated the involvement of all four officers to secure his arrest. Although neither police witness was able to offer an explanation about how Belanger sustained a severe skull fracture, the police theorized that Belanger possibly suffered the fracture as well as scrapes and bruises while rolling around on the Kendall Street pavement during the efforts of the four officers to effectuate his arrest. Officer Cameron did not testify; at trial

time he was no longer a member of the Central Falls police department but was employed as a police officer in a nearby Massachusetts community.

In support of its appeal, the city faults the trial justice in three areas: the charge to the jury and the denials of the city's motions for a directed verdict and for a new trial.

In his charge to the jury, the trial justice alluded to the fact that Belanger was seeking punitive as well as compensatory damages and told the jury that it could award punitive damages if it found that the police acted "maliciously, wantonly, blatantly outside the scope of their authority." The municipality's trial counsel, at the conclusion of the charge, lodged an objection to this language, emphasizing that he had asked the trial justice to instruct the jury that Central Falls would not be liable for the "malicious, willful or wanton misconduct of its police officers."

The city faults the trial justice for his charge on punitive damages. It concedes that the use of excessive force by its police department could impose liability on the municipality; but when the trial justice referred to malicious and willful acts, such conduct, in the words of the city's trial counsel, "would not fall within the line and scope of employment of a police officer." The city not only faults the charge but also complains that the trial justice should have granted the city's motion for a directed verdict because it never authorized the police to assault Belanger in a wanton and willful manner. We see no necessity for considering these contentions.

■ At trial, the city made no request for a special finding[1] in regard to damages, that is, how much for compensatory damages, and how much for punitive damages. Indeed, as far as compensatory damages were concerned, a physician testified

that Belanger, because of the confrontation with the police, is now an epileptic who is subject to continuous seizures. Belanger is required to take a daily dosage of Dilantin, which is not successful in fully controlling the seizures. Any increase in the dosage, in the physician's opinion, could be fatal. A portion of Belanger's skull is missing. He has required a "cranioplasty," defined by the physician as an artificial replacement of the cranium. The physician also estimated that Belanger's future medical expenses would be in the neighborhood of $25,000.

Exchanges between the jury's foreman and the trial justice while the jury was deliberating clearly indicate that the jury's concern was to indemnify Belanger rather than to punish the city or its police force. We are convinced that the jury never considered the punitive-damages aspect of this litigation when it returned a verdict for $55,000. (This sum was later reduced to $50,000, the maximum amount allowed by Rhode Island's Governmental Tort Liability Act, G.L. 1956 (1969 Reenactment) chapter 31 of title 9 (1984 Cum.Supp.).)[2]

In considering the city's new-trial motion, the trial justice filed a written decision in which he expressed the belief that the police, in apprehending Belanger, had used excessive force. He then commented on the city's failure to produce Officer Cameron or to offer an explanation for his absence. Such a failure, he said, caused the jury to believe that his testimony would have been damaging to the city. The city now complains that the trial justice's reliance on the so-called empty-chair doctrine was improper.

■ Concededly, a litigant's unexplained failure to produce an available witness who would be expected to give material testimony in the litigant's behalf permits, but does not compel, a factfinder to

---

1. In *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.,* R.I., 474 A.2d 436, 443–44 n. 5 (1984), we took the opportunity to highlight the significance of requesting special findings.

2. Effective January 1, 1985, the maximum amount allowed by the Act was increased to $100,000. Public Laws 1984, ch. 87, § 1.

draw an inference that had the witness testified, the testimony would have been adverse to the litigant. *Conlin v. Greyhound Lines, Inc.*, 120 R.I. 1, 6 n. 3, 384 A.2d 1057, 1060 n. 3 (1978); *Anderson v. Friendship Body and Radiator Works, Inc.*, 112 R.I. 445, 450, 311 A.2d 288, 291 (1973). However, in *Benevides v. Canario*, 111 R.I. 204, 301 A.2d 75 (1973), we stressed that the doctrine is to be applied with caution so that as a condition precedent in its invocation there must be a showing of the missing witness's availability to the person who would be expected to produce the witness, and in a jury case the person seeking to gain the benefit of the unfavorable inference must make it known to his or her adversary that a request for such a charge is going to be made of the trial justice.

Here, the trial justice's reference to the missing witness amounted to a gratuitous comment on the weakness of the city's defense. In considering a motion for a new trial, a trial justice need not make an exhaustive analysis of all the evidence which was adduced at trial, but reference must be made to the evidence upon which the fate of the motion is decided. *Juchnik v. Betters*, R.I., 471 A.2d 222, 223 (1984). When, in considering a motion for a new trial, a trial justice accepts the testimony of one witness that is in conflict with the testimony of another witness, the acceptance of one is the rejection of the other. *Fonseca v. Balzano*, R.I., 454 A.2d 700, 702 (1983). Here, the trial justice made it clear that in rejecting the city's motion for a new trial, he was relying on the evidence given by Belanger and the serious injuries Belanger received. Thus, the trial justice referred to the evidence which, if believed, justified the jury's verdict, and this court will not disturb his determination.

Parenthetically, we would add that even if the trial justice had failed to discharge his duties in consideration of the new-trial motion and we were to apply the appellate rule, as we have in *Padykula v. Luoni*, R.I., 459 A.2d 965 (1983), and countless other cases and examine the evidence in the light most favorable to the prevailing party, Belanger, to determine if there is any competent evidence that, if believed, would support the jury's verdict, we would sustain the denial of the city's motion for a new trial.

The defendant's appeal is denied and dismissed, and the judgment previously entered in the Superior Court is affirmed, with the exception of the provision calling for the payment of prejudgment interest.[3] Upon remand of the record to the Superior Court, the judgment will be amended by eliminating the interest provision.

The defendant's motion for reargument is denied pro forma.

---

**3.** In his brief, the plaintiff conceded that the state, because of the holding in *Andrade v. State,* R.I., 448 A.2d 1293 (1982), is liable for damages only and not prejudgment interest.