DECISION
"Put aside any feelings of prejudice, bias, hatred or malice. Decide this case on the law and on the evidence, without sympathy, compassion, partiality or favor. Take the evidence as you find it. Take the law as I give it to you, and do exact and equal justice between the parties to this case so that your mind and your conscience will be at peace with the oath you have taken as jurors."
This basic but simple instruction has been given by justices of the Superior Court for decades to jurors about to deliberate in a case. Its admonition is no less required for a judge sitting without a jury.
The issue before this Court is the petition of Patricia DiPrete to collect all or some of the revoked pension benefits of her husband Edward D. DiPrete.
On April 29, 1999 this Court decided:
(1) Edward D. DiPrete has not satisfied the condition precedent of rendering honorable service in his public employment.
(2) Edward D. DiPrete has no legal or equitable right to receive any pension or other retirement benefits from the Retirement System.
(3) The pension of Edward D. DiPrete is revoked in its entirety effective February 17, 1999.
In support of her petition, Patricia DiPrete relies on the Rhode Island Public Employee Pension Revocation and Reduction Act. Specifically, G.L. 36-10.1-3 (d):
 "If the superior court determines that the retirement or other benefits or payments of a public official or public employee should be revoked or reduced under this chapter, it may, in its discretion and after taking into consideration the financial needs and resources of any innocent spouse . . . order that some or all of the revoked or reduced benefits or payments be paid to any innocent spouse . . . as justice may require.
Pursuant to statute, a trial without the intervention of a jury was held May 24 and May 25, 1999. Patricia DiPrete testified and also submitted as evidence, without objection:
(1) Appraisal of Property, 555 Wilbur Avenue, Cranston, R.I. (Exhibit 1)
(2) Deposition of Frank W. Sullivan, M.D. (Exhibit 2)
(3) Deposition of John S. Renza, Jr., CPA (Exhibit 3)
(4) Vocational Assessment Employability Evaluation — Paul F. Murgo (Exhibit 4)
(5) Proof of Life Expectancy (Exhibit 5).
The Retirement Board presented as a witness William J. Piccirilli who the Court qualified as an expert witness in the field of business evaluation and James Reilly from the Retirement Board. Also received as evidence were the tax returns of Frank A. DiPrete Realty Co., Inc. for the years 1994-1998, as well as the tax returns of Edward D. and Patricia M. DiPrete for the years 1990-1997.
In addition, the Retirement Board called as its witness Edward D. DiPrete who testified upon advice of counsel that he would exercise his right under the 5th and 4th Amendments to the United States Constitution and refuse to answer questions put to him by counsel. Among the questions asked by counsel were:
 Did he own any real estate?
 Are any of his children holding any money for him?
 What was his interest in Frank A. DiPrete Realty Co., Inc.?
 Did he have an interest in any other business?
 Did he have an interest in Arlington Insurance?
 Did he have an interest in Ocean State Markets?
 Was he collecting Social Security benefits?
 When did he plan on collecting said benefits?
 What were his employment plans upon his release from the ACI?
 What income did he presently have?
On May 28, 1999 the attorneys argued the merits of the case and this Court reserved decision.
In the circumstances of this case, the petitioner Patricia DiPrete has the burden of proving by a fair preponderance of the evidence:
(1) she is an innocent spouse.
(2) she has financial need of the pension or benefits to which her husband was otherwise entitled to but for the finding he did not render honorable service.
(3) she has no resources from which to draw upon.
(4) justice requires the granting of some or all of the revoked benefits or pension.
Fair preponderance of the evidence means the petitioner must prove each of the aforementioned facts by the greater weight of the evidence. Greater weight of the evidence means by such evidence — when weighed and considered with evidence offered to oppose it — has more convincing power in the mind of the fact finder. With that standard in mind, I find the following facts to be supported by the evidence and the reasonable inferences that can be drawn from the evidence presented.
 INNOCENT SPOUSE
The uncontradicted testimony presented establishes Patricia DiPrete, married to Edward DiPrete in August 1956, to be completely innocent of any misconduct that caused the revocation of Edward DiPrete's pension and benefits. The evidence supports a finding that as First Lady of the State of Rhode Island, Patricia DiPrete was extraordinary in her graciousness and for her support of various charitable enterprises such as a homeless shelter for women in South Providence and a strong advocate for education about human sexuality during the AIDS crisis. Being First Lady during the six years her husband was Governor unfortunately took a toll on her mental health as evidenced by Dr. Frank Sullivan's deposition (See Exhibit 2). The petitioner has established that she qualifies as "an innocent spouse."
 FINANCIAL NEEDS
One can neither adequately nor intelligently consider "needs" without also considering available "resources." Black's Law Dictionary defines needful as "necessary, requisite, essential, indispensable." Suffice it to say that the statute contemplates "needs," not "wants," of a petitioner. On that point the evidence supports a finding that, at present, Patricia DiPrete is not employable as a nurse, a profession she had prepared for decades ago. Dr. Sullivan's testimony also supports a finding that she is not able to pursue other employment at the present time. Thus, conceding the fact that she is, in need of pension or other benefits, the issue becomes whether or not she has any resources available to her that could accommodate whatever financial needs have been proven.
 RESOURCES
The testimony of Patricia DiPrete was not entirely probative on the issue of available resources of either her or her husband. Indeed, in response to questions of both her counsel and counsel to the Retirement Board, she responded "I don't know." This Court does not interpret her inability to respond to the financial questions asked as in any way an effort to be deceitful or evasive. Simply put, she is not alone among married spouses who are ignorant of the financial resources of their married partner. She did acknowledge her home had six bedrooms, a pool and a tennis court. Adjoining their property was another lot owned by the DiPrete's. The appraisal of J. Clifden O'Reilly, Jr. (Exhibit 1) presented by the petitioner dated May 18, 1999, states that the market value estimate of the home at 555 Wilbur Avenue is $275,000; the market value estimate of parcel II is $40,000 and the market value estimate for parcel III is $10,000 for a combined value of $325,000. Testimony was presented that an equity loan of $100,000 was obtained. Thus, competent evidence supports a finding that the DiPrete's have at least $225,000 in real property. That testimony is buttressed by that of John Renza. In his deposition (Exhibit 3) at page 24 he finds a net equity in the house to be $222,898. The Retirement Board called as a witness William Piccirilli who testified about the monetary value of the Frank DiPrete Realty Co., Inc. He acknowledged that his opinion as to value was affected by his inability to review certain records. However, he did testify based on the evidence available to him that in his opinion the business for which Edward DiPrete was one of three partners, was valued at anywhere from $800,000 — $1,200,000. He further testified that Ed DiPrete has a 44.59 percent interest in the business. He concluded Ed DiPrete's interest in that business to be anywhere from $350,000 — $500,000. The Board called Edward DiPrete who, as indicated, refused to testify. Although counsel for the Retirement Board did not request this Court to instruct the witness to answer questions for which there appeared to be no legal basis to refuse to answer, counsel now asks this Court to draw an inference adverse to Patricia DiPrete from his refusal to testify. Counsel for Patricia DiPrete argues, since he no longer is a party it would be improper to penalize her for his refusal to testify. I believe petitioner's counsel's interpretation ofTona, Inc. v. Evans, 590 A.2d 873 to be correct. At page 876 our Supreme Court stated: "However, it should be noted that the trial justice in a civil case may have the option of drawing certain inferences and applying certain sanctions upon a party litigant
who refuses to answer on self incrimination grounds." However, in certain circumstances it is appropriate to draw an adverse inference from the failure to call an available witness. InBelanger v. Cross, 488 A.2d 410, our Supreme Court held, "A litigant's unexplained failure to produce an available witness who would be expected to give material testimony in the litigant's behalf permits — but does not compel — a fact finder to draw an inference that had the witness testified, the testimony would have been adverse to the litigant." The petitioner has the burden of proving that her available resources can not accommodate her financial needs. Her inability to identify family assets made it imperative that someone familiar with those assets come forward and help her meet her burden of proof. Edward DiPrete was obviously available to the State and would have been available to her if she had called him as a witness for the purpose of establishing what limited resources she possessed. According to Patricia DiPrete, Edward DiPrete was the person most knowledgeable about the financial assets and liabilities of the marriage partnership. Her failure to call him and his refusal to testify for the State compels me — in the circumstance of this case — to infer that his testimony, if presented honestly, would have been adverse to her interest. I am compelled to find the petitioner has failed to sustain her burden of proving that she is without financial resources to accommodate her financial needs.
 JUSTICE MAY REQUIRE
Counsel for the petitioner argues that pursuant to 15-5-16.1
of the General Laws, [Assignment of Property] had Patricia DiPrete filed for a divorce from Edward DiPrete, she would be entitled to at least half of his pension. He further argues that it should not be the public policy of the State to, in any way, encourage parties to separate or divorce. With that contention, I agree. However, such an argument fails to consider what property may be assigned to the parties to a marriage. Specifically, a pension is considered the property of the spouse who earned it and is entitled to be assigned to that spouse's partner when appropriate. In the circumstance of this case, Edward DiPrete lost his pension because of dishonorable service. He is not entitled to any monies from the Retirement Board and as such neither would she under 15-5-16.1. One half of nothing is still nothing. Had Edward DiPrete been entitled to all or part of his pension, counsel's arguments might be more persuasive. Further, in considering whether justice requires the granting of some or all of his pension benefits, one cannot ignore the fact that Edward DiPrete has collected the pension since January 1991. As of February 1999, he has collected $372,162.65 from the Retirement Board. The indictment to which Edward DiPrete plead guilty to referenced offense dates from "early 1984 through December 30, 1990." If those six years of dishonorable service were not counted by the Retirement Board he would not have qualified for the pension he started receiving in January 1991. Since his arraignment on April 18, 1994 and his pleas of not guilty and his subsequent public protestations of innocence, he delayed the revocation of his pension and continued to receive pension benefits knowing full well his dishonorable service disqualified him. A reasonable inference can be drawn that Patricia DiPrete benefited significantly from the $372,162.65 received.
Applying the law to the evidence presented, I am compelled to find:
1. that the petitioner has proven that she qualifies as an innocent spouse;
2. that the petitioner has failed to sustain her burden of proving that she is in financial need of retirement benefits or payments;
3. that the petitioner has failed to sustain her burden of proving that she does not have sufficient financial resources; and,
4. justice neither requires nor permits this Court to grant any retirement benefits or payments to the petitioner.
The petition is denied.
Counsel for the Retirement Board of the Employees' Retirement System of the State of Rhode Island shall prepare a judgment in both the instant petition and the original petition in accordance with the Court's decision of April 29, 1999 and of this date.