June 3, 2026

**Supreme Court**

No. 2024-66-Appeal.
No. 2024-72-Appeal.
(PC 12-1012)

Julie DeOliveira et al.          :

              v.               :

Greg Trecaso et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2024-66-Appeal.
No. 2024-72-Appeal.
(PC 12-1012)

Julie DeOliveira et al.          :

v.          :

Greg Trecaso et al.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  The plaintiffs, Julie and Maxine DeOliveira[1] (Julie, Maxine, or plaintiffs), appeal from a final judgment entered following a jury verdict in favor of the defendant, Star Insurance Company (Star or defendant), on their action alleging negligence against Greg Trecaso (Mr. Trecaso), Star's insured, for a motor vehicle accident that occurred on Interstate 95 South in March 2010. The defendant filed a cross-appeal alleging error in the trial justice's decision to deny its motion for judgment as a matter of law.

---

[1] Because this case involves a motor vehicle accident during which both Julie and her daughter, Maxine DeOliveira, were allegedly injured, we use each person's first name for clarity.  We intend no disrespect.

- 1 -

Because we conclude that the trial justice did not err in denying plaintiffs' motion for a new trial or in any other respect, and accordingly affirm the judgment, we do not reach the merits of defendant's cross-appeal.

**Facts and Procedural History**

A description of the pertinent procedural history and a brief summary of testimony and evidence relevant to this appeal follow. Additional facts relevant to the specific issues identified in plaintiffs' papers appear in the discussion of the issues.

Julie initiated the instant case on behalf of herself and her then-minor daughter by filing a four-count complaint against Mr. Trecaso and Greg Trecaso d/b/a GCT Transport alleging that Mr. Trecaso negligently operated his motor vehicle and caused a collision with Julie's vehicle on Interstate 95 South in Cranston, Rhode Island, on March 25, 2010. Shortly after filing her complaint, and before Mr. Trecaso filed a response, Julie amended the complaint to add Star Insurance as a defendant. Star's answer admitted that it insured Mr. Trecaso, but otherwise denied the allegations in the amended complaint. In addition, Star asserted a counterclaim for indemnification against Julie, who was driving on the day of the accident.[2] Maxine turned eighteen during the course of the litigation and was thereafter

---

[2] Julie was represented by a different attorney for Star's counterclaim. We refer to this attorney as "counterclaim counsel" for clarity.

substituted as an independent plaintiff. Meanwhile, Mr. Trecaso and Greg Trecaso d/b/a GCT Transport were dismissed from the case because plaintiffs failed to effectuate service.

Prior to the commencement of a four-day jury trial in September 2023, the trial justice considered and denied plaintiffs' motion to exclude the introduction of a video deposition of Mr. Trecaso. In their motion *in limine*, plaintiffs argued that the trial justice should prohibit admission of the videotaped deposition because the court lacked personal jurisdiction over Mr. Trecaso, who had been dismissed from the case with prejudice. The trial justice denied the motion and admitted the video under Rule 32 of the Superior Court Rules of Civil Procedure, thereby rejecting plaintiffs' argument that the Superior Court lacked jurisdiction over him.

During their opening statement, plaintiffs played a recording of a 911 call from an unidentified witness who reported, "I just saw a really bad car crash on 95 south * * * by exit 14 or so." The 911 caller further stated that a tractor trailer "flip[ped] a car" and that "the tractor trailer just smashed the car, I don't know really what happened, a tractor trailer smashed into a white car."

Julie then testified that she was "driving straight" on Interstate 95 South on the date of the accident when she "noticed [a] truck coming on from [the] Jefferson Boulevard [on-ramp]. And then * * * like out of nowhere, I just felt a pull on my car and a thump, thump, thump. And I lost total control of the car." After colliding with

the truck, Julie stated that she crossed several lanes of traffic, hit the wall separating the north and southbound sides of Interstate 95, and "tipped sideways, like, upside down." Julie testified that the truck with which she collided "was coming onto the highway to the lane that I was going to go [into]" but that she did not see the truck enter her lane. Julie testified that she was eventually pulled from the car by emergency services, at which point she noticed an injury to her shoulder. Julie explained that the injury to her shoulder ground her world to a "halt" and required the aid of several certified nursing assistants. On cross-examination, Julie was impeached with evidence of her medical history which reflected a lack of cooperation with various members of her medical team, inconsistencies in her responses to interrogatories and deposition questions when compared to her trial testimony, and evidence of a volatile relationship with her daughter in the months following the accident.

The plaintiffs next introduced a partially edited version of the video recording of Mr. Trecaso's deposition notwithstanding their pretrial motion *in limine* to exclude the deposition entirely.[3] Mr. Trecaso testified that he was driving his truck in the second lane from the right when he saw Julie's car come up on his left-hand side "with a right turn signal on." Mr. Trecaso explained that he heard a "crunch,

---

[3] A transcript of that testimony was marked as an exhibit for identification reflecting redactions ordered by the trial justice.

and [he] look[ed] in [his] mirror and [saw] this car going off to the left toward the median and hit the Jersey wall." Mr. Trecaso stated that he was not changing lanes at the time of the accident and that he had been in the center lane "most of the way through town." Mr. Trecaso further testified that, after getting out and inspecting his truck, he surmised that Julie's car "hit [his] tires." Mr. Trecaso testified that he was traveling in the second lane at the time of the accident and that Julie's car was "coming into my lane."

The plaintiffs also called Maxine as a witness. Maxine testified that she "saw a big truck coming. And then all of a sudden, it just -- just boom. Just felt this just big push. And that's when we just went across the lanes." The plaintiffs' attorney asked Maxine whether Julie left her lane of travel before the collision, and Maxine responded "no." The plaintiffs' attorney then asked whether the truck had come into their lane of travel, to which Maxine responded, "That was my understanding. It looked like that's what he was doing. And it's just -- it was just a split second of him moving over and 'psht', hit us."

On cross-examination, Star's attorney presented Maxine with a photograph of her mother's car from the date of the accident and asked whether she could identify an on-ramp in the vicinity of the car in the photograph; Maxine responded that she could not see one. Star's attorney then asked Maxine whether her mother's story about Mr. Trecaso entering the highway from an on-ramp could have been mistaken;

Maxine did not directly respond. Star's attorney also asked Maxine to confirm whether, at her deposition, she stated that she had not seen the collision itself; Maxine responded that that was her testimony. Following Maxine's testimony, and the testimony of two witnesses whose statements are not pertinent to the instant appeal, plaintiffs rested. Star's attorney subsequently moved for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure; the trial justice reserved ruling on that motion.

Star's only witness in its case-in-chief was Trooper Lisa Hanley of the Rhode Island State Police, who investigated the accident. Trooper Hanley testified that, upon arriving at the scene, she located Julie's car about 200 feet north of the Jefferson Boulevard on-ramp. Based on information she gathered from individuals on the scene, she determined that Mr. Trecaso was not entering the highway from the on-ramp at the time of the accident. Trooper Hanley then read the narrative summary of her police report into the record. The report indicated that Mr. Trecaso was traveling south, and that Julie's vehicle was in the process of changing lanes, when the rear passenger door of her car sideswiped the front fender and tire of Mr. Trecaso's truck. Both plaintiffs' counsel and counterclaim counsel cross-examined Trooper Hanley, largely questioning the thoroughness of her investigation.

Immediately prior to a short rebuttal examination of Julie at the close of Star's case, Star renewed its earlier motion for judgment as a matter of law. The plaintiffs'

attorney additionally raised certain objections to the verdict sheet and to statements made during Star's closing statement. The jury subsequently returned a verdict finding that neither Julie nor Maxine proved by a fair preponderance of the evidence that Star was negligent.

Julie and Maxine thereafter filed a motion for a new trial alleging a host of errors. The plaintiffs' motion for a new trial and Star's renewed motion for judgment as a matter of law were heard at two separate hearings before the trial justice. The first, in late September 2023, concerned defendant's motions for judgment as a matter of law. We do not address the substance of those motions in deciding the instant appeal; we note, however, that the trial justice denied the motions on the basis of judicial estoppel. The second hearing, held in October 2023, addressed plaintiffs' motion for a new trial, which the trial justice denied. Both plaintiffs and defendant filed timely notices of appeal. We refer to additional facts as needed in our discussion of the issues.

## Issues Presented

On appeal, plaintiffs present eleven alleged errors. They argue that the trial justice abused his discretion in three ways related to the deposition of Mr. Trecaso; abused his discretion in two ways related to Trooper Hanley's testimony; and abused his discretion in denying objections to defendant's statements during opening remarks and closing arguments. The plaintiffs also argue that the trial justice

committed an error of law in both the jury instructions and the phrasing of the verdict sheet and that he abused his discretion by overruling their objection when defendant violated the empty chair doctrine. Finally, plaintiffs appeal the trial justice's denial of their motion for a new trial.

In its appeal, Star challenges the trial justice's decision to deny its renewed motion for judgment as a matter of law on the grounds that plaintiffs failed to meet their burden of exhausting the possibility of litigating their claims directly against Mr. Trecaso under G.L. 1956 § 27-7-2 prior to amending their complaint to name Star as a defendant, and on the grounds that judicial estoppel had been incorrectly applied to their claim.

Having thoroughly reviewed the record, we affirm the trial justice's decision with regard to each of plaintiffs' alleged errors. Accordingly, we decline to address Star's cross-appeal challenging the denial of its motions for judgment as a matter of law.

## Mr. Trecaso's Deposition Testimony

We first consider plaintiffs' multiple assertions of error with respect to the trial justice's decision to admit Mr. Trecaso's deposition testimony. We review a trial justice's decision to admit evidence under an abuse of discretion standard. *Accetta v. Provencal*, 962 A.2d 56, 60 (R.I. 2009). A trial justice has wide discretion to determine the relevance, materiality, and admissibility of offered evidence, and

we will uphold a trial justice's decision to admit or exclude evidence unless the trial justice clearly abused her or his discretion and the evidence is "both prejudicial and irrelevant." *Id.* at 60 (quoting *State v. Merida*, 960 A.2d 228, 234 (R.I. 2008)). Based on our review of the record, we conclude that the trial justice did not err in admitting portions of Mr. Trecaso's videotaped deposition.

First, plaintiffs argue that the trial justice erred in failing to exclude certain statements in Mr. Trecaso's deposition in which he stated that Julie drove into his truck. The plaintiffs objected to the introduction of this evidence prior to trial on the basis that Mr. Trecaso "did not witness Ms. DeOliveira's car drive into his Tractor Trailer" and therefore he was not qualified to testify to whether Julie drove into him. The trial justice denied plaintiffs' request in a written order. The trial justice found that plaintiffs' attorney was "present or had the opportunity to be and did not raise objections or move to strike" and that "counsel now moves to strike their own questions and answer received, after not having done so at the deposition."

We conclude that the trial justice did not abuse his discretion in admitting those portions of the deposition testimony. Each of the answers plaintiffs now seek to have this Court determine were impermissibly admitted were precipitated by a question from plaintiffs' counsel. Although our rules do not require that a party make an objection during a deposition in order to later object to a statement's relevancy or materiality, a trial justice has wide discretion to admit evidence it deems

relevant and material. *See* Super. R. Civ. P. 32(e)(3)(A); *Accetta*, 962 A.2d at 60. Here, the trial justice correctly found that plaintiffs elicited the responses which they sought to have excluded, and, as a result, declined to grant plaintiff's motion. Moreover, it is apparent from the recorded deposition that Mr. Trecaso's statements were both relevant and material. Specifically, Mr. Trecaso's conclusion that Julie drove into him was based on his perception of the series of events both before and after her collision with his truck and was therefore relevant to the question of whose conduct caused the accident. *See* R.I. R. Evid. 401 (defining "relevant evidence"); R.I. R. Evid. 602 (describing requirement that a witness possess personal knowledge of the matter on which they are to testify). Accordingly, we conclude that the trial justice did not abuse his discretion in admitting those statements.

The plaintiffs next argue that the trial justice abused his discretion in failing to exclude statements in Mr. Trecaso's deposition that purportedly constituted improper vouching for his own credibility and an improper attack on Julie's credibility. In particular, plaintiffs object to statements during Mr. Trecaso's deposition where he stated that plaintiffs' counsel was "not involved with the truth," that "I should have [a lawyer] against you," and that "[y]ou need to stand up and say that." In addressing plaintiffs' argument in response to their motion to exclude those statements, the trial justice denied plaintiffs' request on the ground that plaintiffs' counsel "acted inappropriately and unprofessionally by accusing the witness of

attempting to derail, questioning the meaning of the oath * * *, questioning the witness's 'world view' and otherwise arguing with [the] witness." At the hearing on plaintiffs' motion for a new trial, the trial justice added that he chose to admit Mr. Trecaso's statements so that the "jury [could] get a sense of" the deposition including the "unnecessarily hostile" nature of plaintiffs' counsel's line of questioning.

In our review of the record, we are satisfied that the trial justice did not abuse his discretion in admitting these statements based on the fact that Mr. Trecaso's statements were given in response to plaintiffs' counsel's questions, and because the trial justice has wide discretion in determining the materiality of evidence presented to the jury. *Accetta*, 962 A.2d at 60. We are unpersuaded by plaintiffs' suggestion that these statements suggested an opinion on Julie's credibility. Rather, it is plain from the transcript of the deposition that Mr. Trecaso's statements were directed at plaintiffs' counsel and not Julie, and therefore could not have constituted impermissible comments about Julie's credibility. We therefore find no abuse of discretion in the trial justice's decision to admit these statements.

The plaintiffs next argue that the trial justice erred in failing to exclude the entirety of Mr. Trecaso's deposition because Star never made a showing of Mr. Trecaso's unavailability to testify in person. The plaintiffs' argument is advanced for the first time before this Court, however, and is therefore waived. *Cappuccilli v. Carcieri*, 174 A.3d 722, 733 (R.I. 2017) ("The raise-or-waive rule precludes a

litigant from arguing an issue on appeal that has not been articulated at trial.")
(quoting *Thornley v. Community College of Rhode Island*, 107 A.3d 296, 302 (R.I. 2014)).  In the Superior Court, plaintiffs argued that Mr. Trecaso's deposition should be excluded in its entirety because the Superior Court lacked personal jurisdiction over Mr. Trecaso because he had been dismissed from the case with prejudice.  In advancing that argument, plaintiffs conceded that "Mr. Trecaso is not an 'out of state witness' for purposes of Rule 32 unavailability, but rather, somebody who the Court has no personal jurisdiction over * * *."  Having made that argument, however, plaintiffs are barred from raising Rule 32 in this Court as a means to argue that Mr. Trecaso's deposition should have been excluded in its entirety. *See E.T. Investments, LLC v. Riley*, 262 A.3d 673, 676 (R.I. 2021) (restricting appellant's ability to advance a new theory on an issue when that theory was not presented before trial court).

Finally, plaintiffs contend that the trial justice erred in permitting defendant to rely on Mr. Trecaso's deposition and police statement to argue that Julie crossed into Mr. Trecaso's lane of travel.  Prior to trial, plaintiffs filed a motion *in limine* seeking to prevent defendant from using Mr. Trecaso's deposition to establish that Julie crossed lanes because Mr. Trecaso did not see Julie drive into his truck.  A justice of the Superior Court denied plaintiffs' motion on the grounds that plaintiffs did not cite any rule of evidence or legal authority that barred its admission, and

because he concluded that plaintiffs' argument goes to the weight of the statements in Mr. Trecaso's deposition rather than their admissibility. On appeal, plaintiffs add that defendant also should not have been permitted to rely on Mr. Trecaso's written police report statement that Julie drove into his truck.

We perceive no abuse of discretion as to the trial justice's decision to admit either the deposition or the police report because at no point during this litigation have plaintiffs identified any rule of evidence that would block the statements from being admitted. Rather than substantively challenge its admissibility, plaintiffs have consistently asserted that defendant should not have been allowed to *rely on* the statements and police report because Mr. Trecaso admitted that he did not see Julie drive into his truck. As the trial justice noted, however, that argument poses a question for the jury as to the weight that ought to be given to Mr. Trecaso's description of events. Accordingly, we conclude that the evidence was properly admitted, and the trial justice did not abuse his discretion in doing so.

### Trooper Hanley

The plaintiffs make several arguments before this Court pertaining to Trooper Hanley's testimony. We will address each in turn.

First, plaintiffs allege that Trooper Hanley's police report should not have been allowed into evidence because it contained her own narrative as well as Mr. Trecaso's written assumption about how the accident occurred. Based on our review

of the record, plaintiffs failed to adequately preserve this argument for appeal. At a pretrial hearing, plaintiffs' counsel withdrew the objection to the police report. Puzzlingly, however, when defendant sought to publish the police report to the jury, plaintiffs' counsel asserted that plaintiffs had "reserved at pre-trial [their] objections * * * regarding the police report." Our review of the record, however, reveals that plaintiffs had not "reserve[d]" any objection to the police report during pretrial hearings; rather, plaintiffs affirmatively indicated that the objection was withdrawn. Our well-settled raise or waive rule prevents us from addressing arguments not raised before the trial justice in the first instance. *See E.T. Investments, LLC*, 262 A.3d at 676. Here, plaintiffs' failure to press the objection at trial on any ground other than the one already abandoned compels us to conclude that that argument is waived. *Id.*

Second, plaintiffs argue that the trial justice abused his discretion in permitting Trooper Hanley to testify to Julie's credibility. This argument is also waived. During Trooper Hanley's testimony, Star's counsel asked Trooper Hanley "what information [she] * * * gather[ed] from the parties that led [her] to indicate that Mr. Trecaso could not have been entering the on-ramp at Exit 15[.]" The plaintiffs' sole objection to that question was that it was "leading." The plaintiffs did not assert any additional basis for their objection either at trial or in their motion for a new trial. Before this Court, however, they argue that that question sought to

have Trooper Hanley testify as to Julie's credibility. The plaintiffs never raised the argument that defense counsel's question required Trooper Hanley to opine on Julie's credibility before the trial justice, and therefore their argument is waived. *See Cappuccilli*, 174 A.3d at 733.

Third, plaintiffs argue that the trial justice erred in admitting Google Earth aerial photographs of the area of Interstate 95 where the accident occurred in 2010 because Trooper Hanley "[l]acked the [k]nowledge" to authenticate those photographs. The trial justice addressed plaintiffs' argument about the photographs at trial. When Trooper Hanley took the stand, Star's counsel asked whether aerial photographs produced by defendant were accurate representations of the section of Interstate 95 where the accident occurred; she responded that they were. The plaintiffs' counsel then objected on the grounds that the foundation had not been laid to establish Trooper Hanley's actual knowledge regarding the portion of Interstate 95 South where the accident occurred. Star's attorney subsequently asked additional questions to establish her knowledge and thereafter sought to admit the exhibits in full. At that point, plaintiffs' counsel objected on the grounds that the photograph had not been authenticated and requested to conduct a voir dire of Trooper Hanley.

During voir dire, Trooper Hanley confirmed that she had "driven 95 South numerous times." She also testified that she viewed the highway from above the ground while flying into T.F. Green Airport "about twenty times." She testified

upon further questioning, however, that she did not recall the path of her flights into the airport and she could not recall whether her flight flew directly over "the 95 South area where Exit 15 and Exit 14 are located[.]"  The plaintiffs' counsel did not ask any further questions, the photographs were admitted in full, and plaintiffs' counsel did not restate his objection to the introduction of the photographs.

On this record, we cannot conclude that the trial justice abused his discretion in admitting the aerial photographs.  "The burden of proof for authentication * * * is * * * slight." *O'Connor v. Newport Hospital*, 111 A.3d 317, 323 (R.I. 2015) (brackets omitted) (quoting *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994)). The trial justice need only be satisfied that "there is enough support in the record to conclude that it is reasonably probable that the evidence is what its offeror proclaims it to be." *Id.* (brackets omitted) (quoting *State v. Oliveira*, 774 A.2d 893, 926 (R.I. 2001)).  Trooper Hanley testified that she was familiar with the Interstate 95 interchange, that the photographs were "true and accurate representations * * * of Google Earth as it existed in 2010,"  that the interchange's layout had not changed from 2010 to 2013, and, during a voir dire by plaintiffs' counsel, she stated that she had driven on Interstate 95 many times and had seen Interstate 95 from an airplane while flying into T.F. Green Airport.  Based on this evidence, we conclude that the trial justice did not abuse his discretion in concluding that Trooper Hanley could

authenticate that the aerial photographs were what Star's attorney claimed them to be. *See id.*

Nevertheless, plaintiffs argue that Trooper Hanley was not a sufficient witness to authenticate computer-generated photographs because she was not a forensic scientist, citing *United States v. Espinal-Almeida*, 699 F.3d 588 (1st Cir. 2012), and *Odom v. State*, 383 So. 3d 322 (Miss. Ct. App. 2023). Those cases are inapposite. In *Espinal-Almeida*, the United States Court of Appeals for the First Circuit upheld a trial judge's admission of an edited aerial photograph that depicted a defendant's travel patterns where that evidence was derived from GPS data and where an expert was not present to testify to the authenticity of the underlying data upon which the map was based. *Espinal-Almeida*, 699 F.3d at 609-13. In *Odom*, Mississippi's intermediate appellate court held that a Google satellite image that had been edited to reflect the location of a car based on location data pulled from a third-party's corporate software was not properly authenticated because no effort had been made to authenticate the underlying data used to create the edited image and the testifying law enforcement officer was not qualified to do so. *Odom*, 383 So. 3d at 330-31. However, the *Odom* court nonetheless determined that the error was harmless. *Id.* at 331.

Both of those cases concern significantly more complex evidence than the evidence at issue in the instant case and only one of them, *Odom*, held that the

testimony of the particular law enforcement officer who testified in that case could not authenticate the computer-generated image challenged on appeal. *Odom*, 383 So. 3d at 331. Moreover, unlike in both *Espinal-Almeida* and *Odom*, plaintiffs here object to the introduction of a bare, unedited photograph of a portion of a highway. To be sure, the photographs, like those in the other cases, were pulled from the Internet, but notably, defense counsel represented at trial that the photographs were "from April 30, 2010," in response to which plaintiffs' counsel presented no objection, and Trooper Hanley testified that they accurately depicted the interstate as of that date. Our review of the record reveals that Trooper Hanley was qualified to testify to what the photographs depicted. We therefore discern no abuse of discretion in the trial justice's decision to admit the photographs as accurate representations of Interstate 95 South.

The plaintiffs next argue that Trooper Hanley should not have been allowed to interpret the Google Earth images once admitted because that required expert testimony. The plaintiffs first object to the following question posed by defense counsel: whether, "to [Trooper Hanley's] knowledge, * * * the configuration of the interstate, the location of the exits, the on-ramps and the off ramps changed from 2010 to 2013." The plaintiffs' argument as to that question is waived, however. Although plaintiffs objected to the question when it was asked, and stated as grounds for that objection that Trooper Hanley was not qualified to give an expert opinion

on the configuration of the highway, the question was subsequently withdrawn. The plaintiffs next object to defendants' subsequent question which asked Trooper Hanley whether the aerial photographs were "true and accurate representations * * * of Google Earth as it existed in 2010?" The plaintiffs objected at trial on the basis that defendants had not established that Trooper Hanley possessed the expert knowledge necessary to answer questions regarding the configuration of the highway; on appeal, they argue that Trooper Hanley's testimony about the geographic location of the images required specialized knowledge. We observe no abuse of discretion in the trial justice's decision to overrule plaintiffs' objection, however, because defendant's question did not seek to elicit expert testimony; rather, it only sought testimony as to Trooper Hanley's personal knowledge of the highway's layout at the time of the accident.[4] Accordingly, we discern no abuse of discretion in the trial justice's decision to admit Trooper Hanley's testimony regarding the Google Earth images.

The plaintiffs also argue that Trooper Hanley should not have been allowed to give an opinion on who caused the accident. Specifically, plaintiffs identify errors in the trial justice's decision to overrule their objection to three questions asked of

---

[4] We additionally observe that, just two pages earlier in the transcript, defendant asked a nearly identical question regarding whether the photographs accurately depicted the highway at the time of the accident. Trooper Hanley responded that they appeared to, and plaintiffs did not object.

Trooper Hanley. The first question asked, "Does the accident report state that the plaintiffs' vehicle was in the process of changing lanes prior to impact?" On appeal, plaintiffs contend that this question called for Trooper Hanley's expert opinion. Our review of the entire transcript, however, satisfies us that defense counsel was not calling for Trooper Hanley to offer any "specialized knowledge" about the accident that would require expert testimony. R.I. R. Evid. 702. Rather, the question only asked her to read what was contained in her accident report which, at that point in the trial, had already been admitted as a full exhibit. Therefore, the trial justice did not err in overruling plaintiffs' objection.

The second question asked: "Does the 911 call, when the vehicle -- the truck flipped on the vehicle, does that influence any of the findings in the accident report?" Both plaintiffs' counsel and Julie's counterclaim counsel objected to the question on different grounds, and the trial justice sustained Julie's counterclaim counsel's objection. Because the trial justice sustained one of the objections to that question, plaintiffs cannot now appeal the trial justice's denial of their objection; the trial justice sustained one of the objections, and there is therefore nothing left for this Court to review. *See State v. Gautier*, 950 A.2d 400, 413 (R.I. 2008) (declining to address issue where appealing party's objection was sustained at trial).

Finally, plaintiffs argue that the trial justice erroneously overruled their objection to the following question:

"Q: Trooper Hanley, as part of your accident report, did you note in your accident report anywhere that Mr. Trecaso was a contributing factor to this accident?"

The plaintiffs' counsel and counterclaim counsel objected on the grounds that the question called for expert opinion. Once again, we disagree. The question calls for Trooper Hanley to look at her accident report (which was admitted as a full exhibit) and tell the jury what it contained. Therefore, we conclude that the trial justice did not abuse his discretion in failing to sustain plaintiffs' objection to that question.

**Opening Remarks and Closing Argument**

The plaintiffs argue that the trial justice erred in overruling their objections to defense counsel's statements during his opening remarks and closing argument. When reviewing an allegation of error during opening remarks and closing argument, this Court recognizes that counsel enjoys "the privilege of engaging in all fair comment on behalf of his or her client." *Baker v. Women & Infants Hospital of Rhode Island*, 268 A.3d 1165, 1169 (R.I. 2022) (brackets omitted) (quoting *Norlin Music, Inc. v. Keyboard "88" Inc., of Warwick*, 425 A.2d 74, 75-76 (R.I. 1981)). "[T]he proper function of an opening statement is to apprise the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the [plaintiff] and the defense expect to produce at trial in support of their respective positions." *Avarista v. Aloisio*, 672 A.2d 887, 892 (R.I. 1996) (quoting *State v. Byrnes*, 433 A.2d 658, 664 (R.I. 1981)). Statements made during opening

- 21 -

remarks are impermissible when they "attempt[] to appeal solely to the prejudice and passion in the minds of the jurors, thereby diverting their minds from the case at issue." *Baker*, 268 A.3d at 1169 (quoting *Norlin Music, Inc.*, 425 A.2d at 75-76). However, this Court will not overturn a verdict unless it appears that the verdict was influenced by the statement and where there was no curative instruction. *Id.*

In his opening remarks, defense counsel noted that Julie and Maxine would testify that Mr. Trecaso entered the highway from the Jefferson Boulevard on-ramp, but that "all of the facts in the case, including where the trooper found the car, the location of the car, and all of the other testimony proves it is physically impossible for the accident to happen in the way that the plaintiffs say it happened. Simply because Mr. Trecaso was not coming on the on-ramp, the accident happened * * * North of Exit 15." The plaintiffs argue on appeal that defense counsel should not have been permitted to make the statements about the accident's physical impossibility because that assertion is "baseless." In our review of the record, however, defense counsel's statement permissibly alluded to the evidence it expected to—and ultimately did—produce in support of its position that plaintiffs' version of events was impossible; accordingly, we perceive no error in his having alluded to that evidence in his opening statement. *See Avarista*, 672 A.2d at 892.

Likewise, during closing argument defense counsel asserted that "[i]t is physically impossible for the accident to happen the way [the plaintiffs] described"

- 22 -

because "[f]or the accident to happen in the way that they say it happened, Greg Trecaso has to be coming on the Exit 15 on-ramp. But her car is somehow found 200 feet north of Exit 15." We have consistently held that parties retain "considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." *State v. Boillard*, 789 A.2d 881, 885 (R.I. 2002). Here, defendant connected its argument regarding impossibility of plaintiffs' version of events to the specific evidence Trooper Hanley provided regarding the location of Julie's car at the time she came to the scene. Accordingly, we perceive no error in allowing that statement.

Finally, any possible error in defense counsel's opening remarks or closing argument was mitigated by the trial justice's comprehensive instructions telling jurors that those statements were not evidence and could not be considered as such. We assume the jury followed the instructions and, therefore, do not conclude that the brief and permissible mentions of physical impossibility prejudiced plaintiffs in any way. *See Brunswick Corporation v. Sposato*, 120 R.I. 673, 676, 389 A.2d 1251, 1253 (1978).

The plaintiffs further argue that the trial justice erred by overruling their objection to defense counsel's statement during closing argument wherein he asserted that plaintiffs' counsel and Julie's counterclaim counsel "attacked" and "besmirch[ed]" Trooper Hanley on the stand. The plaintiffs argue that those remarks

were "intended to goad and fire up the all-female Jury * * *." The trial justice overruled plaintiffs' objection at trial, and we conclude that he was correct to do so. A statement at closing argument is improper when it is "totally extraneous to the issues in the case and tend[s] to inflame and arouse the passions of the jury." *Boillard*, 789 A.2d at 885 (quoting *State v. Mancini*, 108 R.I. 261, 273-74, 274 A.2d 742, 748 (1971)). Here, the evidence submitted to the jury about the cause of the accident was derived from the statements of five witnesses: Julie, Maxine, Mr. Trecaso, an anonymous 911-caller, and Trooper Hanley. Trooper Hanley's credibility and plaintiffs' efforts to undermine that credibility during cross-examination were therefore not "extraneous to the issues in the case" but rather appropriate subjects of closing argument. *Id.* (quoting *Mancini*, 108 R.I. at 273-74, 274 A.2d at 748). Moreover, defense counsel's remarks accurately described plaintiffs' attorney's pointed cross-examination of Trooper Hanley during which he suggested that Trooper Hanley had not effectively dispatched her investigative duties. We therefore conclude that the trial justice did not err in overruling plaintiffs' objection to these statements.

**Jury Instructions**

The plaintiffs next argue that the trial justice erred in giving an expert witness instruction that was misleading because neither party introduced any experts. The plaintiffs' attorney raised the same objection before the trial justice, who overruled

- 24 -

the objection on the grounds that plaintiffs had introduced medical record evidence that warranted an expert witness instruction. "[T]his Court examines jury instructions 'in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them.'" *Botelho v. Caster's Inc.*, 970 A.2d 541, 545 (R.I. 2009) (quoting *Parrella v. Bowling*, 796 A.2d 1091, 1101 (R.I. 2002)). "An erroneous charge warrants reversal only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." *Mandros v. Prescod*, 948 A.2d 304, 310 (R.I. 2008) (quoting *State v. Sivo*, 925 A.2d 901, 913 (R.I. 2007)). After conducting our required review of the instructions in the instant case, we perceive no error.

The trial justice's instructions included only one reference to expert testimony. There, the trial justice informed the jury that "[o]rdinarily, the law does not permit a witness to testify about his or her opinions or conclusions," but that an expert witness is a person who has developed expertise

> "and, as a result, is permitted to give his or her opinion about matters in which they are experts. * * * For any expert testimony to be admitted in this case, you will be required to assess the credibility of their testimony and to determine how much weight, if any, you give to it."

The plaintiffs argue that the trial justice's instructions led the jury to believe that Trooper Hanley was an expert and misled them to believe that they, rather than the trial justice, were to determine whether Trooper Hanley's testimony was

- 25 -

admissible.  The jury instructions do not reference Trooper Hanley directly, however; nor do they state that any particular testimony offered by either party should be viewed by the jury as expert testimony.  Accordingly, we cannot conclude that a reasonably intelligent juror would understand the trial justice's general reference to expert testimony to have referred directly to Trooper Hanley, nor do we think it caused prejudice to plaintiffs. *See Botelho*, 970 A.2d at 545.  Moreover, even if the instructions led a juror to believe that Trooper Hanley had provided expert testimony, the instructions further directed the jurors that they were "required to assess [her] credibility * * * and to determine how much weight, if any, [to] give to it."  We discern no error in the trial justice's instruction, which accurately informed the jurors of their charge to independently assess all the evidence before them.

## Verdict Sheet

The plaintiffs also object to language contained in the verdict sheet.  The plaintiffs object to the first question on the verdict sheet which asked the jurors: "Do you find that Julie DeOliveira proved, by a fair preponderance of the evidence, that the Star Insurance Company (Mr. Trecasso [*sic*]) was negligent in causing her injuries?"  The plaintiffs argue that the trial justice erred when he refused to insert the words "had any negligence" in place of "was negligent" in order to signal to the jury that they need not find defendant one hundred percent liable in order to find in plaintiffs' favor.  The trial justice overruled plaintiffs' objection at trial upon

- 26 -

concluding that "the question makes no inference one way or another as to whether or not they have to prove 100 percent negligence or any negligence. But the instructions do. * * * I also note that Question No. 3 and Question No. 6 require a division of negligence according to percentages. So something smaller than 100 percent would be appropriate." We agree.

Reviewing the verdict sheet in its entirety, we conclude that there was no error. *See Mangiarelli v. Town of Johnston*, 289 A.3d 560, 566-67 (R.I. 2023). The verdict form required the jurors to go through three steps. First, it informed the jurors that if they found that Star was negligent, they should proceed to the second question, which asked if defendant was also the proximate cause of Julie's injuries.[5] If the jury answered that question in the affirmative, the form instructed the jury to proceed to question three, which asked the jury to proportion the degree of negligence attributable to each driver. Viewed in its entirety, the verdict form addressed plaintiffs' concerns that Star need not be found one hundred percent liable in order for plaintiffs to recover. Indeed, even if the members of the jury believed that Star was negligent *and* believed that Mr. Trecaso was the proximate cause of plaintiffs' injuries, they still were provided the opportunity to apportion fault however they saw fit, including finding that defendant was less than one hundred percent liable. Therefore, there is no reason to assume that the omission of "had any

---

[5] Questions five through eight posed the same questions as to Maxine.

- 27 -

negligence" from question one misled the jury into believing that defendant had to be one hundred percent negligent in order for plaintiffs to receive any award of damages. Accordingly, we conclude that an ordinarily intelligent juror would not be misled by the verdict sheet's contents, and we affirm the decision of the trial justice declining to adopt plaintiffs' preferred wording. *See Mangiarelli*, 289 A.3d at 566-67.

## Empty Chair Doctrine

The plaintiffs next argue that the trial justice erroneously overruled their objection to a statement made by defense counsel in closing argument and further erred by failing to give a cautionary instruction in light of that objection. In his closing argument, defense counsel stated that plaintiffs "could have gotten any of their experts to come in and say that Greg Trecaso was negligent. They didn't. They had the burden of proof. They called no experts." The plaintiffs objected at trial; that objection was overruled. We perceive no error with the trial justice's decision to overrule plaintiffs' objection.

As an initial matter, plaintiffs' argument that the trial justice erred in failing to provide a cautionary instruction to the jury in light of defense counsel's statements must fail because they did not request a cautionary instruction from the trial justice before the jury retired. *See Boillard*, 789 A.2d at 883 ("We have held that ordinarily a defendant must request a cautionary jury instruction or a mistrial in order to

- 28 -

preserve for review an objection raised during closing arguments."); *see* Super. R. Civ. P. 51(b).

The plaintiffs did timely object to the allegedly impermissible statement during closing; therefore, we will address the trial justice's decision to overrule that objection. The empty chair doctrine permits a factfinder to draw an adverse inference from "a litigant's unexplained failure to produce an available witness who would be expected to give material testimony [o]n the litigant's behalf." *Retirement Board of Employees' Retirement System of State v. DiPrete*, 845 A.2d 270, 294 (R.I. 2004) (quoting *Belanger v. Cross*, 488 A.2d 410, 412-13 (R.I. 1985)). Before such an inference may be drawn, however, "it must be demonstrated that the missing witness was available to the person who would be expected to call the witness." *Id.* In deciding plaintiffs' motion for a new trial, the trial justice concluded that the empty chair doctrine was not implicated by defense counsel's closing argument because "it was not a violation for the defendant to talk about the burden of proof being on the plaintiff, who has the burden of proof * * *." We agree, and further conclude that the empty chair doctrine was not implicated by defendant's statement that plaintiffs "had the burden of proof" but "called no experts" because the empty chair doctrine permits such an inference only where the parties establish that a party had an available witness that they neglected to call. *See Retirement Board of Employees' Retirement System of State*, 845 A.2d at 294. Here, however, there is no

- 29 -

evidence that plaintiffs possessed a witness that they failed to call, or that defendant sought to gain a beneficial adverse inference from the plaintiffs' failure to call that witness. *Id.* Thus, we conclude, that the empty chair doctrine has not been violated.

**Motion for A New Trial**

We review a trial justice's decision on a motion for a new trial with deference. *Dextraze v. Bernard*, 253 A.3d 411, 416 (R.I. 2021). Accordingly, we will "affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong." *Kazarian v. New London County Mutual Insurance Company*, 331 A.3d 984, 991 (R.I. 2025) (quoting *Zarembka v. Whelan*, 176 A.3d 485, 487-88 (R.I. 2018)).

The plaintiffs challenge the trial justice's decision to deny their motion for a new trial because, they argue, the jury's conclusion "defies reason, logic and common sense" and is against the fair preponderance of the evidence. The plaintiffs point to the introduction of the 911 call in which the caller described seeing Mr. Trecaso's truck "smash into the White Car" to argue that Mr. Trecaso's contrary testimony should not have been believed and, therefore, the jury should have reached a different verdict.

Our review of the trial justice's decision reveals that he accurately stated the standard applicable to a motion for a new trial, thoroughly evaluated the evidence

presented at trial, articulated his credibility determinations, and ultimately conducted the proper analysis. He noted that neither Julie nor Maxine were credible given Julie's inconsistent statements and elusive answers to questions, and Julie and Maxine's denial of their shared history of interpersonal tension. The trial justice acknowledged that Mr. Trecaso did not testify that he witnessed Julie leave her lane and make contact with his truck, but rather that he testified that he saw Julie with her blinker on as if she was preparing to take an exit. The trial justice further acknowledged the 911 call played for the jury, but found that it was of "limited" value because it was from an unidentified caller and contained the statement, "I don't know really what happened" casting doubt on the reliability of the speaker. After conducting his analysis, the trial justice determined "the only possible proof of negligence, if any, is this 911 caller," which did "not add up to reliable proof by even a mere preponderance of the evidence." He consequently denied the plaintiffs' motion for a new trial. Because it is clear to us that the trial justice applied the appropriate standard, conducted the correct analysis, and did not otherwise clearly err, we affirm his decision denying the plaintiffs' motion for a new trial.

**Conclusion**

Based on our assessment of the arguments presented in the plaintiffs' appeal, we affirm the trial justice's decision on the plaintiffs' motion for a new trial and reject all of the plaintiffs' specific claims of error. Because we so conclude, we

decline to address the defendant's cross-appeal. Therefore, we affirm the judgment in favor of the defendant and remand the papers to the Superior Court.

Justice Goldberg participated in the decision but retired prior to its publication.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Julie DeOliveira et al. v. Greg Trecaso et al. |
| **Case Number** | No. 2024-66-Appeal.<br>No. 2024-72-Appeal.<br>(PC 12-1012) |
| **Date Opinion Filed** | June 3, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Charles N. Garabedian, Esq. |
| | For Defendant:<br><br>Todd J. Romano, Esq. |